Pamela GRACE *v.* Theodore GRACE

95-831                                           930 S.W.2d 362

Supreme Court of Arkansas
Opinion delivered October 21, 1996
[Petition for rehearing denied November 25, 1996.]

*Kaplan, Brewer, & Maxey, P.A.*, by: *Philip E. Kaplan* and *Regina*

*Haralson,* for appellant.

*Dover & Dixon, P.A.,* by: *Philip E. Dixon* and *W. Michael Reif,* for appellee.

DAVID NEWBERN, Justice. This is a divorce case. The only issues on appeal concern division of the marital property. The property included major assets, such as the marital home, which was awarded to Pamela Grace, and an insurance "book of business," which was awarded to Theodore Grace. As we understand it, the "book of business" of an insurance agent consists of his right to residual payments from insurance policies sold and from prospective renewals. The Chancellor also adjusted the division of property between the parties by assigning to Mr. Grace a debt the Chancellor termed "unenforceable" and yet "owed" by the parties to his parents in the amount of $5000. We hold the Chancellor erred in subtracting from the value of the "book of business" the amount of federal tax that would have to be paid in the event the asset were sold. We hold it was not error for the Chancellor to consider the $5000 debt, assign it to Mr. Grace, and accordingly reduce the award to Mrs. Grace by half the amount of the debt.

### 1. The tax credit

A chancellor may consider "the federal income tax consequences of the court's division of property" when she finds it would be inequitable to divide the property half and half. Ark. Code Ann. § 9-12-315(a)(1)(A)(ix) (Repl. 1993). In this case, there is no demonstrable federal income tax consequence resulting from the *division* of the property. The Chancellor did not order the "book of business" to be sold. Mr. Grace mentioned, at one point in the proceedings, that he might have to sell that asset in order to satisfy his obligation to Mrs. Grace, but the Chancellor said in her summation, "I don't think there's any evidence that he's going to sell."

Mr. Grace argues the witnesses who testified about the value of the "book of business" said a buyer would "expense" the purchase. We presume that means a purchaser would be someone in a position to deduct from business profits the expense of purchasing the "book of business" for tax purposes. That ostensibly would give the asset a higher value to the buyer, thus creating a higher market value or selling price and, therefore, a greater tax consequence to the seller. The argument obviously assumes certain facts about the hypothetical buyer being in a position to "expense" the purchase.

The contention is that the evidence of the value of the asset was thus based on an assumption that Mr. Grace would have to pay tax on the sale. Again, no sale has been ordered, and none seems to be in prospect.

In support of the Chancellor's decision on this point, Mr. Grace cites *Hogan v. Hogan,* 796 S.W.2d 400 (Mo.App. 1990), in which it was held that it was proper to consider the tax consequence of a sale of a building in the division of assets because "The concept of fair market value assumes the sale of the property to an interested buyer." The opinion does not show whether or not a sale was to occur.

We have not previously addressed the question whether tax consequences of the sale of an asset should be considered when the asset is not required to be sold by the divorce decree and when there is no indication that a sale will occur. Cases addressing this issue are collected in Annot., Tax Consequences of Distribution, 9 ALR 5th 568 (1993).

The majority view is exemplified by decisions such as *Kaiser v. Kaiser,* 474 N.W.2d 63 (N.D. 1991), and *Crooker v. Crooker,* 432 A.2d 1293 (Me. 1981). In the *Kaiser* case, for example, one of the marital assets was an oil-well service company. The Trial Court awarded it to the husband and, in evaluating it for purposes of achieving an equal division of all marital assets, subtracted an amount to be paid in federal taxes upon liquidation. The North Dakota Supreme Court held it was an error of law and a manifest abuse of discretion for the Trial Court to have reduced the value of the asset by tax consequences which were speculative. In doing so, the Court quoted the following from *Hovis v. Hovis,* 518 Pa. 137, 541 A.2d 1378 (1988):

> ...In order to insure a "fair and just determination and settlement of property rights" we favor predictability over mere surmise in the valuation and distribution of marital property after divorce. Accordingly, we hold that potential tax liability may be considered in valuing marital assets only where a taxable event has occurred as a result of the divorce or equitable distribution of property or is certain to occur within a time frame such that the tax liability can be reasonably predicted.

The North Dakota Court continued as follows:

We agree with the foregoing decisions holding that a trial court in a divorce action should consider potential taxes in valuing marital assets only if (1) the recognition of a tax liability is required by the dissolution or will occur within a short time; (2) the court need not speculate about a party's future dealing with the asset; (3) the court need not speculate about possible future tax consequences; and (4) the tax liability can be reasonably predicted.

In this case Mr. Grace is asking not only that we speculate that he will sell the asset in question but that when and if he does so his tax liability will be the same as it would be today. Although the argument is based on an accountant's testimony about a prospective buyer of the "book of business," he also asks us to speculate that a prospective buyer would "expense" the purchase and that the tax consequences to such a buyer would be the same as would occur today. As the North Dakota and Pennsylvania Supreme Courts, we prefer not to engage in such speculation.

■■ With respect to § 9-12-315, we need only point out that we have not been made aware of any federal income tax consequence which will result from "the court's division of property." In considering a similar statute, an Indiana appellate court stated:

> The thrust of the Statute is to recognize that there may be in the plan of division of marital property certain tax consequences which should be taken into account. The clear ... [implication] is that *only* tax consequences necessarily arising from the plan of distribution are to be taken into account, not speculative possibilities. The Statute limits the trial court to consider only the tax consequences of "*of the property disposition.*" [Emphases in the original.]

*Harlan* v. *Harlan*, 544 N.E.2d 553 (Ind. App. 1989). We hold it was error to consider the tax consequences of a prospective sale of the "book of business" because the decree did not require such a sale and there was no evidence that a sale was imminent.

## 2. The "debt"

Theodore and Pamela Grace received $5,000 from his parents. The money was intended to finance landscaping of their new home. While there is some doubt as to the exact time the money

was received, it was no later than 1989. Mr. Grace's mother testified it was intended that the money be repaid. It had not been repaid at the time of the divorce in 1995. Pamela Grace testified she could not remember any discussion about repayment, apparently contesting any obligation to pay the money back.

■ The Chancellor remarked that the debt was "unenforceable" but that it was "owed" by the parties. She apparently considered it unenforceable due to Ark. Code Ann. § 16-56-105(1) (1987), which places a three-year limitation on "any contract, obligation, or liability not under seal and not in writing …." As we pointed out in *Hackett* v. *Hackett,* 278 Ark. 82, 643 S.W.2d 560 (1982), a chancellor has no authority to determine the validity of an obligation to a third party who is not a party to the divorce. Our statute on division of marital property provides, however, that a chancellor is to "take into consideration … [the] [e]state, liabilities, and needs of each party …." Ark. Code Ann. § 9-15-315(a)(1)(A)(vii) (Repl. 1993). We have entertained questions about marital debts and whether they should be "considered" in assigning marital property as questions of fact, and we decline to reverse decisions about them unless they are clearly erroneous. Ark. R. Civ. P. 52(a); *Pinkston* v. *Pinkston,* 278 Ark. 233, 644 S.W.2d 930 (1983); *McEndree* v. *McEndree,* 255 Ark. 243, 499 S.W.2d 596 (1973). *See also Warren* v. *Warren,* 33 Ark. App. 63, 800 S.W.2d 730 (1990).

■ While we disregard the Chancellor's conclusions about whether the debt in this case was "enforceable" or "owed," we have no reason to say her factual conclusions about the transfer of the money are in error, or that she erred in considering the $5,000 as a "liability" of the parties.

We could perhaps modify the decree and give Pamela Grace an additional share of the marital property in the amount of $42,370, or half of the $84,740 tax liability for which Theodore Grace was given credit in the original decree. We note, however, that the decree provides for a final adjustment figure owed to Mrs. Grace in the amount of $22,100 to be paid by Mr. Grace at the rate of $500.00 per month with interest at the rate of 8.25% per annum. In view of the fact the entry of a decree consistent with this opinion may make it advisable to consider other payment arrangements, we choose to remand the case to the Chancellor for further orders.

Affirmed in part, reversed in part, and remanded.