Allyson HUNT *v.* Bryan HUNT

99–855

15 S.W.3d 334

Supreme Court of Arkansas
Opinion delivered April 27, 2000

*John Lineberger,* Chancellor;

*Conner & Winters, P.L.L.C.,* by: *John R. Elrod, Ruth Ann Wisener,* and *Vicki S. Bronson,* for appellant.

*Shemin Law Firm,* by: *Kenneth R. Shemin,* for appellee.

ROBERT L. BROWN, Justice. This case is before us on review following our grant of appellant Allyson Hunt's petition to review an unpublished supplemental opinion of the court of appeals. The issue on review is whether the non-marital stock of appellee Bryan Hunt should be used to satisfy the margin debt he owes to Smith Barney or whether that debt should be deemed marital debt to be shared equally by the parties.

On December 17, 1987, Allyson Hunt and Bryan Hunt were married, and during the course of their ten-year marriage, they had four children. On June 18, 1997, Bryan Hunt filed for divorce, and on November 19, 1997, a divorce decree granting him a divorce and custody of the four children was entered. During their marriage, Bryan Hunt held several upper level management positions at J.B. Hunt Transport, Inc., while Allyson Hunt acted mainly as a homemaker. The salient points of the divorce decree regarding division of property are these:

- Bryan Hunt is to pay Allyson Hunt alimony at the rate of $2,750 a month for five years.

- Allyson Hunt is to keep her separate personal property, including certain furniture, paintings, jewelry, and clothing.

- 9,572 shares of J.B. Hunt Transport Co. are marital stock, while all remaining shares of J.B. Hunt stock held by Bryan Hunt are non-marital property (approximately 250,000 shares).

- 250 shares of Hunt Capital Corporation are marital stock to be divided evenly.

- A promissory note from Layton Stewart made payable to Bryan Hunt in the amount of $450,000 is marital property.

- 300 shares of Best Motor Company are marital property to be divided evenly. $2,170,000 borrowed from J.B. Hunt and Johnelle Hunt is a debt of the company.

- A federal income tax refund in the amount of $43,063 and an Arkansas state income tax refund in the amount of $13,823 are marital property.

- The parties' residence at 5505 Bryant Place in Springdale is marital property.

- The following margin debts of Hunt Capital Corporation and Bryan Hunt are marital debts to be divided equally:

  Smith Barney $649,584
  John Tyson 3,000
  Nations Bank 63,328
  Montgomery Securities 132,794
  Bear Stearns 247,594

- Bryan Hunt's partnership interest in Hunt Capital Partnership in the amount of 25% of the profits and 50% of the losses is marital property.

- Bryan Hunt is to pay the cost of future counseling for Allyson Hunt, her health insurance for three years, and her attorney's fees.

Following entry of the divorce decree, Allyson Hunt moved (1) to amend the divorce decree so as to have her share of one-half of the marital assets and all of her separate property transferred to her immediately, and (2) to hold Hunt Capital Corporation solely liable for all of the margin debt. The chancery court granted the transfer of the marital property but denied the request concerning the margin debt.

Allyson Hunt appealed the divorce decree to the court of appeals and raised several points. Initially, the court of appeals affirmed the chancery court across the board in an unpublished opinion. *Hunt v. Hunt*, CA 98-766 (March 3, 1999). On rehearing, the court of appeals entered an unpublished supplemental opinion, wherein it granted Allyson Hunt's petition in part and denied it in part. *Hunt v. Hunt*, CA 98-766 (July 7, 1999). At issue was the marital debt arising out of the margin debt of Hunt Capital Corporation associated with the investment houses of Bear Stearns, Merrill Lynch, Montgomery Securities, and Smith Barney. Margin debt generally accrues where the purchaser buys stock and finances part of the purchase price by borrowing against the stock purchased. Louis and Seligman, *Fundamentals of Securities Regulation*, p. 707 (Little Brown & Co. 1995).

The court of appeals found that the chancery court did not err in holding Allyson Hunt responsible for one-half of this margin debt. However, the court of appeals went further and held that the non-marital stock pledged by Bryan Hunt as collateral for the margin accounts of Bear Stearns, Merrill Lynch, and Montgomery Securities should be used first to satisfy the margin debts. The court of appeals denied the petition for rehearing with respect to the margin debt owed by Bryan Hunt to Smith Barney and stated that the money resulting in this debt was used (1) to pay part of the purchase price of the residence in Springdale, (2) to pay part of the furnishings for that residence, and (3) to pay living expenses. Two of the six court of appeals judges dissented from this decision and would have ordered Bryan Hunt's non-marital stock to be used to pay the Smith Barney debt also.

We initially note that the court of appeals's supplemental opinion holding that the non-marital stock of Bryan Hunt be used to satisfy the margin debts owed to Bear Stearns, Merrill Lynch, and Montgomery Securities is not at issue in our review and, thus, stands as a modification of the divorce decree. The point, which is the subject of this review, is whether Bryan Hunt's non-marital stock should also be used to pay the margin debt he owes to Smith Barney.

Allyson Hunt asks this court to determine that Bryan Hunt's non-marital stock in J.B. Hunt Transport Services, Inc. held in his personal Smith Barney account (#165-23869-11) be used to satisfy

the margin debt owed to Smith Barney or, alternatively, that she not be held responsible for this debt. She disputes the fact that the loans made on this Smith Barney account were used to pay for household or living expenses and claims that during their marriage, Bryan Hunt derived substantial income each month from his employment at J.B. Hunt Transport Co. which was used for their living expenses. She maintains that the chancery court should have made an unequal division of property, which it had the authority to do under Ark. Code Ann. § 9-12-315 (Repl. 1998). Moreover, she contends that Bryan Hunt offered to pay all of the margin debt prior to the divorce decree, including the debt he owed to Smith Barney. Finally, she contends that she is being saddled with payment of one-half of the $649,584 Smith Barney margin debt when she has not been given sufficient assets or income from the marital estate to satisfy that debt.

Bryan Hunt merely points to his testimony at trial where he stated that the Smith Barney loan was used to pay cost overruns on construction of the residence which totaled almost $400,000; to pay for furnishings in the home which totaled approximately $200,000; and to support the parties' standard of living. He further claims that any offer by him to pay all margin debt was made in a proposed pretrial property division, which is not binding, and he concludes that the chancery court did not err by attempting to make an equal distribution of assets and debts.

■ We begin by observing that this court reviews chancery cases *de novo* on the record, and we will not reverse a finding of fact by the chancery court unless it is clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a); *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999). In reviewing a chancery court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Myrick v. Myrick, supra.*

■■ All marital property must be distributed equally under our divorce law unless the chancery court finds such a division to be inequitable. Ark. Code Ann. § 9-12-315(a)(1)(A); *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988). The chancery court has the authority to make an unequal division of marital property under the statute. If an unequal division is made, the court must take the following factors into consideration: the length of the marriage;

age, health and station in life of the parties; occupation of the parties; amount and sources of income; vocational skills; employability; estate, liabilities, and needs of each party and opportunity of each to further the acquisition of capital assets and income; contribution of each party in the acquisition, preservation, or appreciation of marital property, including services as a homemaker; and the federal income tax consequences of the court's division of property. Ark. Code Ann. § 9-12-315(a)(1)(A)(i-ix).

In the instant case, the chancery court found that Bryan Hunt's margin debt in Smith Barney account #165-23869-11 was a marital debt due to the benefit bestowed on both parties by these loans. That benefit was made clear by Bryan Hunt's testimony where he stated that this Smith Barney debt was incurred to finance cost overruns on the construction of the parties' residence, for furnishing the house, and generally to pay for the parties' lifestyle and living expenses. Allyson Hunt did not refute this in her own testimony and, indeed, confirmed the high cost of the house and the furnishings. Allyson Hunt, however, now urges this court to follow its caselaw. She claims that this court has sanctioned an unequal division of property, when the husband's non-marital property or high income warranted such a result. She directs our attention specifically to *Hale v. Hale*, 307 Ark. 546, 822 S.W.2d 836 (1992), and *Richardson v. Richardson*, 280 Ark. 498, 659 S.W.2d 510 (1983).

Neither case, however, provides precedent for the instant case. In *Hale*, for example, we affirmed the chancery court's recognition that the husband had formally volunteered in a mortgage agreement to put up 119 acres of non-marital land as security for the parties' consolidated debt loan. Under these facts, we agreed with the chancery court that this mortgaged land should be used to satisfy that debt. Similarly, in *Richardson*, we affirmed the chancery court's division of property and debts which took into account the husband's high income. We refused to hold that the chancery court had clearly erred in that regard.

In the case before us the extent of Bryan Hunt's monthly income is at issue as well as the profitability of the various marital assets. The chancery court heard the testimony of the parties and other witnesses and sought to produce an even division of the assets and debts. Allyson Hunt adduces the *Hale* and *Richardson* cases as authority for reversing the chancery court in the instant case. How-

ever, in both of those cases, we affirmed the division of property by the chancery court and held that that court had not erred. Likewise, we conclude that the findings of the chancery court in dividing the assets and debt in the case at hand are not clearly erroneous.

We additionally note that the Smith Barney account in dispute in this review (#165-23869-11) was in the name of Bryan Hunt and not in the name of Hunt Capital Corporation, as the other margin accounts at issue before the court of appeals appear to have been. The record shows account activity in this Smith Barney account for the years 1996 and 1997. For a two-month period in 1996, J.B. Hunt Transport Services stock was placed in the Smith Barney margin account, but it was not in the margin account during 1997. There is nothing in the record to support the proposition that the J.B. Hunt Transport Services stock was pledged as security or collateral for the Smith Barney margin debt. Indeed, Allyson Hunt does not argue that it was. Rather, she contends that fairness dictates that the non-marital stock be used to pay off the debt.

█ In her petition for review, Allyson Hunt argued for the first time that the chancery court erred in not following a statute, which she contends is on point. That statute reads:

> No bargain or contract made by any married person, in respect to his or her sole and separate property or any property which may come to him or her by descent, devise, bequest, purchase, or gift or grant of any person, and no bargain or contract entered into by any married person, in or about the carrying on of any trade or business, under any statute of the state, shall be binding upon his or her spouse, or render his or her person or property in any way liable therefor.

Ark. Code Ann. § 9-11-508 (Repl. 1998). This statute also formed the basis for the dissent to the supplemental opinion in the court of appeals. In support of her argument, Allyson Hunt points to *Medlock v. Fort Smith Serv. Fin. Corp.*, 304 Ark. 652, 803 S.W.2d 930 (1991), and *Davis v. Baxter County Reg'l Hosp.*, 313 Ark. 388, 855 S.W.2d 303 (1993). Neither *Medlock* nor *Davis* were divorce cases, however, where the propriety of the division of marital property was at issue. Rather, both cases involved the common-law doctrine of necessaries and the impact of § 9-11-508 on that doctrine. A statute that deals with spousal liability to third-party creditors is not

controlling on the issue of marital debt associated with division of property in a divorce case. They are simply two disparate and distinct matters. We conclude, therefore, that § 9-11-508 is inapposite and note once more that Allyson Hunt did not raise the statute in support of her position to the chancery court or initially to the court of appeals but only did so in her petition for review before this court.

We turn, finally, to the overarching argument made by Allyson Hunt that her share of the Smith Barney debt is staggering, and the marital assets she has received and her potential for enhanced monthly income are meager by comparison. She alludes to the high mortgage debt on the residence which consumes any equity and the personal debt owed to J.B. and Johnelle Hunt by Best Motor Company. As for her interest in the Layton Stuart promissory note, her counsel at oral argument characterized that as virtually worthless, because it is being offset by another obligation in a comparable amount. With respect to the marital property she has received, she values that at only $115,000.

We will not speculate on the earning potential of Best Motor Company, the future viability of the Layton Stewart promissory note, or the value of any other marital asset received by Allyson Hunt. Suffice it to say that the chancery court thoroughly examined this matter as is evidenced by the record in this case and examined the credibility of the witnesses. The court of appeals then modified the divorce decree with regard to payment of Hunt Capital Corporation's margin debt in a manner with which we take no issue. We further observe that should the economic situation of Allyson Hunt change, her award of alimony may be subject to modification. Ark. Code Ann. § 9-12-314(a) (Repl. 1998); *Herman v. Herman*, 335 Ark. 36, 977 S.W.2d 209 (1998).

We affirm the divorce decree as modified by the court of appeals.

IMBER, J., not participating.