Steven Daniel ATKINSON *v.* Deborah D. ATKINSON

CA 00-88 32 S.W.3d 41

Court of Appeals of Arkansas
Division I
Opinion delivered November 29, 2000

*Bridewell & Bridewell Attorneys*, by: *Laurie A. Bridewell*, for appellant.

*Ronald L. Griggs*, for appellee.

JOSEPHINE LINKER HART, Judge. Steven Daniel Atkinson appeals the divorce decree that awarded appellee primary physical custody of the parties' younger child and approximately two-thirds of the disputed marital property.[1] Appellant argues that the chancellor's findings that it was in the younger child's best interest that his custody be awarded to appellee and that it was equitable to award appellee more than one-half of the marital property were clearly erroneous. We disagree with appellant and affirm.

The parties were married in 1981, and during the early years of the marriage they lived in Georgia, where appellant attended college and worked full-time. Appellee also worked during this period of time as a dental assistant, but she stopped attending college after a year and one-half. In 1986, appellant received his undergraduate degree and the parties' first child was born. Appellant's work required that he travel often, and, consequently, the parties reached an arrangement whereby appellee would stay home with their child and forego full-time employment. This was also the period of time that the marriage became more troubled. The parties nevertheless proceeded to have a second child in 1991, and appellee continued to remain at home while appellant continued to travel as a part of his job. The parties moved to Magnolia, Arkansas, and appellant began working as a national sales manager for Alcoa. Despite his success at work, appellant's marriage still suffered because of his job-related traveling. In fact, during the course of the marriage the parties separated on four occasions despite the parties' consultations with a series of marriage counselors. Nevertheless, the marriage continued to suffer, and during the last two months of the marriage, the parties slept in separate parts of their house.

---

[1] According to the decree, the parties came to an agreement that governed how some of the personal property of the marriage was to be divided. Of course, only those items of marital property that were not divided by this agreement are addressed in this appeal.

The parties ultimately separated on October 11, 1998, and appellant filed his complaint on October 15, seeking an absolute divorce from appellee on the grounds of general indignities and custody of the parties' two minor children — Dane, who was born October 15, 1986, and Michael, who was born July 4, 1991. Appellee answered by denying that appellant was entitled to a divorce and counterclaimed seeking custody of both children along with an award of child support.

Following the commencement of the divorce proceedings, appellee retained custody of the parties' minor children, and appellant began a relationship with woman who was a coworker and had separated from her husband five days prior to the parties' separation. She did not think her relationship with appellant was morally wrong because the parties were separated. Ultimately, this relationship became sexual, and appellant and this woman on occasion appeared as a couple. Appellant also frequently brought the children to this woman's house and along with her five-year-old daughter, they would often cook, play games, and watch movies late into the evening.

On February 23, 1999, appellant filed a motion to hold appellee in civil contempt of court for violating the chancery court's standing order prohibiting the parties from harassing one another. Appellee answered by denying that she violated the order. The parties settled the issue and jointly approved an agreed order that was filed March 15, 1999, and, *inter alia*, awarded appellant primary physical custody of Dane and appellee primary physical custody of Michael. This was done, according to appellee, with the hope that appellant's influence would help Dane's behavior and raise his grades at school.

Several days thereafter, appellant took both of the children to a party that was attended mainly by his friends and coworkers. The party was at his paramour's house, and although alcohol was consumed by those who were there, those who were present and testified generally agreed that no one at the party consumed an excessive amount of alcohol. While at the party, appellant experienced an allergic reaction that required he be taken to the hospital and stay there overnight. The children, however, remained at the party and were supervised by an unmarried couple while appellant remained in the hospital. Although this couple allegedly did not

have sexual relations while supervising the children, they did sleep together for approximately two hours while the children slept in a different room.

The matter was tried on May 12, 1999, wherein the chancellor considered all the outstanding issues, including those issues raised in appellee's counterclaim that she filed the previous day for an absolute divorce on the grounds of adultery, seeking alimony and an unequal division of the marital property. The chancellor took the matter under consideration, and in a letter opinion, *inter alia*, the court found that it was in Michael's best interest that his custody be awarded to appellee and that it would be equitable to distribute seventy-five percent of the marital property to appellee. This appeal is taken from the order that embodied the chancellor's letter opinion.

■ On review of this chancery matter, "the whole case is open for review; therefore, all issues raised in the court below are before us for decision, and trial *de novo* on appeal in chancery involves determination of both fact questions and legal issues." *Bradford v. Bradford*, 34 Ark. App. 247, 248, 808 S.W.2d 794, 795 (1991). *See also Ferguson v. Green*, 266 Ark. 556, 564, 587 S.W.2d 18, 23 (1979); *Lewis v. Lewis*, 255 Ark. 583, 502 S.W.2d 505 (1974);*Nolen v. Harden*, 43 Ark. 307 (1884). On *de novo* review, however, we will reverse only on grounds properly argued by an appellant. *See, e.g., Country Gentlemen, Inc. v. Harkey*, 263 Ark. 580, 569 S.W.2d 649 (1978). Moreover, we will affirm the chancellor's findings unless the findings are clearly erroneous. *See* Ark. R. Civ. P. 52(a); *see also Adkinson v. Kilgore*, 62 Ark. App. 247, 970 S.W.2d 327 (1998). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Smith v. Parker*, 67 Ark. App. 221, 224, 998 S.W.2d 1, 3 (1999).

## I. Custody of Michael

■ Appellant argues that the finding that it was in Michael's best interest that his custody be awarded to appellee was clearly erroneous because it was contrary to the rule expressed in *Johnston v. Johnston*, 225 Ark. 453, 456, 283 S.W.2d 151, 153 (1955), that

"[u]nless exceptional circumstances are involved, . . . young children should not be separated from each other by dividing their custody."[2] It is true that in Arkansas this rule is considered to be "settled case law . . . ." *Ketron v. Ketron*, 15 Ark. App. 325, 329, 692 S.W.2d 261, 264 (1985) (citing *Vilas v. Vilas*, 184 Ark. 352, 42 S.W.2d 379 (1931)). It is equally true, however, that we have been critical of parties who use this rule as a substitute for a determination of what is in a child's best interest. *See Riddle v. Riddle*, 28 Ark. App. 344, 349-350, 775 S.W.2d 513, 517 (1989). In cases such as this, a party cannot use a finding that it is in one child's best interest that his custody be awarded a certain parent to infer that it is in the best interest of that child's sibling that his custody also be awarded to that same parent. To permit this rule to operate in that manner would be tantamount to allowing child-custody determinations to be based on presumptions,[3] which is plainly contrary to the law.

■ We hold that the awarding of child custody based solely on the presumption that siblings should be kept together is contrary to Act 278 of 1979, which is codified at Ark. Code Ann. § 9-13-101(a) (Supp. 1999), and states:

> In an action for divorce, the award of custody of the children of the marriage shall be made without regard to the sex of the parent, but *solely in accordance with the welfare and best interests of the children*.

(Emphasis added.) The General Assembly's intention by passing Act 278 is clear — when determining as a part of a divorce action the custody of children of the marriage, the lone criterion is the welfare and best interest of the children. Accordingly, although the value of keeping siblings together is a factor in determining what is in a child's best interest, this rule cannot rise to the level of a presumption that contradicts the statutory standard expressed in Act 278.

■ We now apply this standard to the facts of this case and conclude in our *de novo* review that although there may be some factors that favor appellant's argument, the chancellor's finding was

---

[2] We disagree with appellant's position that *Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999), is applicable. The issue in *Campbell* was whether the chancellor properly applied the rule expressed in *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1997), that the modification of a custody award cannot be based merely on changes in the circumstances in the non-custodian's life.

[3] In fact, Professor Atkinson in his treatise refers to this rule as being a "presumption." *See* 1 Jeff Atkinson, *Modern Child Custody Practice* § 4.17 (1986).

not clearly erroneous.[4] Appellant testified that his children had different personalities, and that Michael and appellee had similar personalities and their relationship was "much better" than the relationship between Dane and appellee. Furthermore, although the children will not live together, the evidence at trial showed that they resided in the same area and attended the same school. Moreover, commensurate with the decreed visitation schedule, the children are scheduled to spend their weekends together. In addition, the evidence at trial demonstrated that appellee is significantly more active in Michael's school life and extra-curricular activities than appellant. We are also, of course, mindful that Michael told the chancellor that he wanted to live with appellee, but are less persuaded by that factor because of Michael's young age.

■ Our decision is also shaped by both appellant's textbook adulterous relationship[5] and his exposure of Michael to a party of alcohol-consuming attendees along with the fact that Michael was supervised by an unmarried couple who slept together in the same house with Michael. Although these types of conduct are not alone dispositive on the issue of what is in Michael's best interest, we do conclude that it is acceptable to consider such conduct when determining what is in a child's best interest.

## II. Unequal Division of Marital Property

Finally, appellant argues that the finding that an unequal division of the marital property would be equitable was clearly erroneous because the chancellor considered the potential inheritance appellant might receive from his parents.[6] In response, appellee

---

[4] Appellee did not cross-appeal the chancellor's finding that it was in Dane's best interest that his custody be awarded to appellant. Accordingly, the sole issue with regard to custody concerns the custody of Michael.

[5] Although a husband and wife may not *feel* married when separated, as a matter of law they *are* married, and any voluntary sexual intercourse between a married person and a person other than the offender's spouse constitutes adultery. See *Black's Law Dictionary* 52 (7th ed. 1999).

[6] We are unpersuaded by appellant's reliance upon *McDermott v. McDermott*, 336 Ark. 557, 986 S.W.2d 843 (1999), which is plainly distinguishable from the case at bar. In *McDermott*, our supreme court held that an attorney's contingency fee contracts were "marital property" as defined by Ark. Code Ann. § 9-12-315(b) (Repl. 1998). In this case, however, we are called upon to determine whether on *de novo* review the chancellor's finding that it was equitable to give appellee an unequal share of the marital property as provided by Ark. Code Ann. § 9-12-315(a)(1) (Repl. 1998), was clearly erroneous.

argues that the finding of an unequal division can be based on other factors and, therefore, the chancellor's finding was not clearly erroneous. We agree with appellee and affirm.

Arkansas statutory law provides that:

(a) At the time a divorce decree is entered:

(1)(A) All marital property shall be distributed one-half ( 1/2 ) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration:

(i) The length of the marriage;

(ii) Age, health, and station in life of the parties;

(iii) Occupation of the parties;

(iv) Amount and sources of income;

(v) Vocational skills;

(vi) Employability;

(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;

(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and

(ix) The federal income tax consequences of the court's division of property.

(B) When property is divided pursuant to the foregoing considerations the court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the order entered in the matter.

Ark. Code Ann. § 9-12-315(a)(1).

In the case at bar, appellant was a vested one-third beneficiary of an undistributed trust worth $250,000, and, according to his mother's testimony, the sole heir — under the terms of her will — to her one-million-dollar estate. In addition, both the decree and record reveal other factors that were introduced into evidence that justified an unequal division of the marital property. The parties were married for more than seventeen years. Moreover, appellee testified she had a part-time job for a local dentist that paid $7.25 per hour, and she had no expectation of better employment in that area. Conversely, appellant's financial situation was far more secure.

As noted, appellant received an undergraduate degree during the course of the marriage, and, according to his employer, for year 1999 appellant's weekly net income as of April, 1999, averaged $1,110.82.

 Objectively speaking, the fact that appellant is an only child and potential heir to a one-million-dollar estate coupled with the fact that he was the beneficiary of the aforementioned trust certainly suggests that he has opportunities for further acquisition of capital assets and income that are unavailable to appellee. Nonetheless, we are satisfied that the chancellor's finding was not clearly erroneous considering the length of this marriage, the vast difference in the stations in life of these parties, their respective occupations, the substantial difference in the amounts and sources of the parties' income, and the parties' respective vocational skills and employability.

Affirmed.

ROBBINS, C.J., and NEAL, J., agree.