Marion Belew DALRYMPLE *v.* Alwyn DALRYMPLE

CA 00-886 47 S.W.3d 920

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered July 5, 2001

*Tripcony Law Firm, P.A.*, by: *James L. Tripcony* and *Scott A. Scholl*, for appellant.

*Dover & Dixon, P.A.*, by: *M. Darren O'Quinn*, for appellee.

JOHN F. STROUD, JR., Chief Judge. In this appeal, we are asked to review the chancellor's findings regarding the division of property and the allocation of debts in a divorce case. Appellant makes three arguments: 1) that the chancellor erred in ruling that appellee's corporation, Dalrymple Insurance Agency, Inc., was nonmarital property; 2) that the chancellor erred in ruling that the agency's renewal commissions were nonmarital property; and 3) that the chancellor erred in ruling that two bank notes representing approximately $41,000 in debt were marital debts rather than corporate debts. We affirm on the first two points and reverse on the last.

Appellant and appellee were married in June 1987. Approximately thirty years prior to the marriage, appellee founded the Dalrymple Insurance Agency. He operated the business as a sole proprietorship until January 1989, eighteen months into the parties' marriage. In that year, he transferred the assets of the sole proprietorship to Dalrymple Insurance Agency, Inc., in exchange for corporate stock. The stock was issued in his name only.

In the divorce proceeding, filed in 1998, appellant asked the court to declare that the stock of Dalrymple Insurance Agency, Inc., was marital property. Appellee opposed appellant's request on the ground that the stock was acquired in exchange for nonmarital property, *i.e.*, the assets of the sole proprietorship. The chancellor ruled in favor of appellee and declared that the corporation was his separate property. The first issue on appeal is whether the chancellor's ruling was in error.

Our standard of review in chancery cases is well settled. Chancery cases are reviewed *de novo* on appeal. *See Hunt v. Hunt*, 341 Ark. 173, 15 S.W.3d 334 (2000). With respect to the division of

property in a divorce case, we affirm the chancellor's findings unless they are clearly erroneous. *See Jablonski v. Jablonski*, 71 Ark. App. 33, 25 S.W.3d 433 (2000). Due deference is given to the chancellor's superior ability to determine the credibility of the witnesses and the weight to be accorded their testimony. *Hunt v. Hunt, supra.*

· Marital property is all property acquired by either spouse subsequent to the marriage, with certain exceptions listed in Ark. Code Ann. § 9-12-315(b) (Repl. 1998). The relevant exception in this case is contained in section 9-12-315(b)(2), which provides that property acquired in exchange for property acquired prior to the marriage is not marital property. Whether this exception applies depends upon whether appellee actually used nonmarital property to acquire the stock of Dalrymple Insurance Agency, Inc.

The facts relevant to the acquisition of the corporate stock are as follows. In 1989, appellee executed a document that assigned his business assets to Dalrymple Insurance Agency, Inc., in exchange for 100 shares of common stock.[1] The corporation's 1989 tax return reflected that, as a result of the exchange, assets valued at $14,568 were received by the corporation. A stock certificate was issued evidencing appellee's ownership of 100 shares in Dalrymple Insurance Agency, Inc. According to appellee, he used no marital assets to purchase the shares of stock.

Appellant argues on appeal that appellee did not prove that he acquired the corporate stock with nonmarital property.[2] She claims first that, in effecting the exchange of assets from the sole proprietorship to the corporation, appellee drew on an account in which marital and nonmarital funds were commingled. She bases her claim on the assertion that, just prior to the marriage in 1987, appellee had only one bank account. She deduces that, as a result, it is likely that business and personal funds were commingled in that one account between 1987 and 1989 and that those commingled funds were later used to acquire the corporate stock. However, appellant's argument is belied by her own testimony that, almost immediately after getting married, she and appellee opened a separate household account. Given that separate business and household

---

[1] While appellee was only issued one share of *preferred* stock in 1990, the assignment of assets reflects that he was issued 100 shares of common stock in 1989 in exchange for his business assets.

[2] Appellant does not argue that the value of the stock appreciated during the marriage or that she is entitled to a portion of such appreciation.

accounts existed between 1987 and 1989, it would be pure speculation to assume that business and personal funds were commingled in either.

Appellant claims further that appellee's evidence was simply insufficient to sustain his burden of proving that the stock was acquired in exchange for nonmarital property. We disagree. First, appellee testified that he used strictly nonmarital funds to acquire the stock. This testimony was not disputed by appellant. When the issue is whether a source of funds is marital or nonmarital, we defer to the chancellor's superior position to resolve credibility questions pertaining to the issue. *See Wright v. Wright*, 29 Ark. App. 20, 779 S.W.2d 183 (1989). Second, appellee had operated the business as his own for thirty years before he married the appellant. It is therefore unlikely that, by changing the business from a sole proprietorship to a closely held corporation for tax purposes, he intended to change its status from nonmarital to marital property. Third, the stock certificates were issued solely to appellee, a factor considered significant in *Cate v. Cate*, 35 Ark. App. 79, 812 S.W.2d 697 (1991). Fourth, as already discussed, there was no evidence that business and personal funds were commingled. Finally, the assignment and tax documents reflected appellee's intention that the acquisition of stock be accomplished solely by the transfer of business assets. In light of these factors, we affirm the chancellor's decision that the corporation was nonmarital property.

The dissent would have us apply the holding of *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987), and declare that any increase in the value of the corporation became marital property by virtue of appellee's efforts. This point is not argued by appellant. It is well recognized that, if a party fails to make a particular argument on appeal, that argument is considered abandoned. *Texarkana Housing Auth. v. Johnson Constr. Co., Inc.*, 264 Ark. 523, 573 S.W.2d 316 (1978). Any basis for reversing a case on appeal should originate in the arguments advanced by the appellant, not from arguments created by appellate judges.

Appellant argues next that the agency's renewal commissions should have been declared marital property subject to division. At the time of the divorce, Dalrymple Insurance Agency, Inc., was authorized to sell life and disability policies for approximately eight companies. Expert testimony was given at trial to the effect that insurance companies commonly pay renewal commissions to agencies from the second through the tenth years following issuance of the policy, so long as premiums are paid and the policy remains in

force. Appellant's expert determined that the net present value of renewals collectible by the agency through 2008 was $330,094. Appellee's expert determined that the net present value of the renewals was $69,139. The chancellor, however, did not reach the issue of valuation because he found that "Dalrymple Insurance Agency, Inc., and its renewal commissions are non-marital property and [appellant] is not awarded any interest therein."

■ Having affirmed the chancellor's determination that the corporation was nonmarital property, it follows, under the facts of this case, that the corporation's renewal commissions are likewise nonmarital property. There is no showing that the corporation's assets have any marital-property value, given the fact that the corporation itself is nonmarital property.[3] Further, if the renewals are considered income rather than assets, they are income from property acquired in exchange for property acquired prior to marriage and thus are exempt from the definition of marital property. *See* Ark. Code Ann. § 9-12-315(b)(7) (Repl. 1998).

■ ■ Appellant argues that such reasoning is faulty because appellee is the sole stockholder of Dalrymple Insurance Agency, Inc., and the corporation's earnings should be deemed his earnings. Appellant is, in effect, asking us to disregard the corporate form and treat appellee and the corporation as one. This is contrary to our law. The fact that one person owns all the stock in a corporation does not make him and the corporation one and the same. *Atkinson v. Reid*, 185 Ark. 301, 47 S.W.2d 571 (1932). A corporation and its stockholders are separate and distinct entities, even though a stockholder may own the majority of the stock. *Thomsen Family Trust v. Peterson Family Enters., Inc.*, 66 Ark. App. 294, 989 S.W.2d 934 (1999). A stockholder does not acquire any estate in the property of a corporation by virtue of his stock ownership; the full legal and equitable title thereto is in the corporation. *Id.*

■ In special circumstances, we will disregard the corporate facade when the corporate form has been illegally abused to the injury of a third party. *Id.* However, there is no evidence here that appellee abused the corporate form and therefore no basis for us to treat appellee and the corporation as one entity.

---

[3] Although a spouse's contribution to an increase in the value of nonmarital property may be considered in making a property division, *see Smith v. Smith*, 32 Ark. App. 175, 798 S.W.2d 442 (1990), the chancellor in this case expressly found that no such contribution was made by appellant, and that finding is not challenged on appeal.

The dissent refers to testimony by appellee that "I," meaning appellee himself, was entitled to commissions from insurance companies. The first-person testimony by the sole shareholder of a corporation is not cause to disregard the corporate form and declare the corporate assets to be his assets.

Based upon the foregoing, we affirm the chancellor's ruling that the renewal commissions are not marital property. In doing so, we do not imply that an insurance agency's renewal commissions may never be considered marital property. Other jurisdictions have recognized that renewal commissions on policies sold during marriage may be considered marital property. *See Pangburn v. Pangburn*, 152 Ariz. 227, 731 P.2d 122 (Ct. App. 1986); *Niroo v. Niroo*, 313 Md. 226, 545 A.2d 35 (1988); *Bigbie v. Bigbie*, 898 P.2d 1271 (Okla. 1995); *Freeman v. Freeman*, 318 S.C. 265, 457 S.E.2d 3 (Ct. App. 1995). We do not reach that issue today, however. Our affirmance of the chancellor's ruling is based upon the particular facts of this case and the particular arguments made by appellant.

The remaining issue is whether the chancellor erred in declaring certain debts to be marital debts rather than corporate debts. In his decree, the chancellor found that the parties had $75,885 in marital debts, which included a $21,000 note to Metropolitan National Bank and a $19,999 note to Mercantile Bank. Appellant was ordered to pay $33,534.50 of the total debt. She argues that the Metropolitan and Mercantile debts should have been assigned to Dalrymple Insurance Agency, Inc., and that the chancellor erred in ordering her to pay any part of them. We agree.

A chancery court has the authority to consider allocation of debt in a divorce case. *Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998). Findings concerning the assignment of marital debts are not reversed unless they are clearly erroneous. *See Grace v. Grace*, 326 Ark. 312, 930 S.W.2d 362 (1996). A chancellor's finding will be deemed clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Atkinson v. Atkinson*, 72 Ark. App. 15, 32 S.W.3d 41 (2000).

The Metropolitan Bank note reflects that it was executed in 1997 for the purpose of "short-term working capital for business purposes." The borrower was listed as "W. Alwyn Dalrymple and Dalrymple Insurance Agency, Inc." The note bore signature lines for appellee individually and as president of the corporation. It was

renewed in 1998 and stated its purpose as "to renew and increase line of credit ... for operating capital." It was renewed again in 1999 after the parties separated and was changed to remove the corporation's name. However, it still stated that the purpose of the loan was a "line of credit for operating capital." The Mercantile Bank note was executed in 1998. It listed appellee as the borrower and carried the following notation: "[r]enewal/line of credit originally used to carry insurance receivables." Despite the language clearly identifying the notes as pertaining to appellee's business, the agency's office manager, Laura Baldwin, testified that the loans were in fact used for the appellant's and appellee's personal living expenses.

 Upon our *de novo* review, we disagree with the chancellor's decision to decide this issue on the basis of testimony that was directly contrary to what was shown on the written instruments. Baldwin's assertion that the bank documents were wrong is not sufficient in this case to contradict the plain language of those documents. We therefore reverse and remand on this point with directions that the Metropolitan and Mercantile notes be assigned to the Dalrymple Insurance Agency, Inc., rather than allocated between appellant and appellee.

Affirmed in part; reversed in part and remanded.

VAUGHT, CRABTREE, and ROAF, JJ., agree.

HART and GRIFFEN, JJ., dissent in part.

JOSEPHINE LINKER HART, Judge, dissenting. Even though the insurance agency was incorporated two years after the marriage and appellant worked full time selling insurance during the twelve years of the marriage, the majority concluded that the corporation was nonmarital property. The majority also reasoned that because "the corporation was nonmarital property, it follows, under the facts of this case," that the renewal commissions from the sale of insurance policies are "likewise nonmarital property."

I respectfully dissent because the majority's opinion is contrary to our supreme court's decision in *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987), which held that passive appreciation of separate property should be classified as separate property, but active appreciation of the property resulting from spousal contribution of substantial effort or skill should be classified as marital property. *See also* Emily Osborn, *The Treatment of Unearned Separate Property at Divorce in Common Law Property Jurisdictions*, 1990 WIS. L. REV. 903,

992 (1990). In *Layman* our supreme court stated, "We conclude that when one spouse makes significant contributions of time, effort and skill which are directly attributable to the increase in value of nonmarital property, as in this case, the presumption arises that such increase belongs to the marital estate." *Layman*, 292 Ark. at 543, 731 S.W.2d at 774. In the case at bar, it is undisputed that appellee was the sole shareholder in the corporation and worked full time during the entire twelve years of marriage in the business. Thus, in my opinion, the increased value of Dalrymple Insurance Agency is marital property.

At issue in this case is whether the chancellor erred by determining that the corporation and the renewal commissions and other residuals from the sale of insurance policies during the marriage was pre-marital property and, therefore, not subject to division. The chancellor's specific statement of the law in open court was as follows: "The burden was on [appellant] to show that there was a significant contribution of capital, time, other resources to give her some sort of interest in the corporation. I don't feel that burden was met." Although that ruling was appealed indirectly, it is contrary to the holding in *Aldridge v. Aldridge,* 28 Ark. App. 175, 177, 773 S.W.2d 103, 104 (1989), which states that "[t]he burden is upon the party who asserts an interest in the property to establish that it is in fact separate property not subject to division." By implication, appellant appealed that ruling by citing as error the court's refusal to divide the stock of Dalrymple Insurance Agency, Inc.

The parties in this case were married in June of 1987, and divorced on February 9, 2000. Prior to and during the marriage, appellee operated a business that sold insurance policies. The business was originally a sole proprietorship that became a closely-held corporation after the marriage and appellee was the sole shareholder.[1] According to appellee's exhibits, there was transferred into the corporation at the time of incorporation a net value of $4,335 (cash in the amount $3,328 and a vehicle with a basis $11,240, and an assumption of an installment note of $10,233). Prior to marriage and thereafter, appellee had only one account, and he deposited $23,000 of his soon-to-be-wife's money into his account and wrote checks to pay his income taxes. Thus, the separate property of appellant and the earnings of the appellee were placed in that account for the duration of the sole proprietorship and transferred

---

[1] Rather than one hundred shares as stated by the majority, according to the record only one share of stock (preferred only) was tendered to appellee for a consideration of $100 in August of 1990.

to the corporation, which was established after two years of marriage.

Appellee asserts that he had no debts at the time of marriage; however, he also admits that but for appellant's giving him $23,000, he would have had to find financing elsewhere. Based on this admission, it appears that appellee had nothing in his business on the date of marriage other than the difference, if any, between appellant's $23,000 and the tax payment. Furthermore, appellee admits that after eighteen months of marriage, he incorporated the business, and all money in a new corporate account came from the old business account. In this regard he stated, "I did not know whether I could specifically identify any funds in the new account that were acquired prior to marriage." Appellee wholly failed to trace either the $100 payment for the preferred stock or the transferred asset to pre-marital monies. Thus, appellee has failed to establish that the transferred funds constituted a nonmarital asset or that the consideration paid for the stock came from nonmarital funds.

Moreover, it was appellee's work efforts of selling insurance policies during the marriage that generated the renewal commissions, which is the increase in value of the business and the corporation, and is a marital asset subject to division as an asset acquired during a marriage. *See* Ark. Code Ann. § 9-12-315 (Repl. 1998). To hold otherwise is to ignore the principle set out by our supreme court in *Layman*, 292 Ark. at 543, 731 S.W.2d at 773-74 (citations omitted), a case similar to the case at bar, as follows:

> The increase in the value of the nonmarital property, the stock in [Layman's, Incorporated], is attributable in part to the time, effort and skill of [the husband] over an extended period of time. Those endeavors belonging to the marital estate, it follows that [the wife] is entitled to a share in the fruits of such efforts .... We conclude that when one spouse makes significant contributions of time, effort and skill which are directly attributable to the increase in value of nonmarital property ... the presumption arises that such increase belongs to the marital estate.

This rationale is in accord with the general principle that "[w]here the appreciation in the value of separate property during the marriage is the result of efforts of either or both spouses, the appreciation is a marital asset." 75 AM. JUR. 2D *Divorce and Separation* § 511 (1998).

To find that the renewal commissions and other residuals are the property of the corporation and that appellant therefore is not entitled to one half of that value is plainly contrary to the law. Appellee failed to introduce into evidence even one contract to establish that the corporation rather than appellee is the recipient of such residuals. Our law requires that an insurance broker or salesman be licensed. *See* Ark. Code Ann. § 23-64-203 (Supp. 1999). Appellee failed to establish entitlement to the residuals from the sale of the policies in the corporation. In fact, the evidence clearly establishes entitlement to the commissions and residuals in appellee.

Appellee, in describing the renewals and commissions testified, as follows:

> When I refer to a lapse, that means that I do not get any more commissions, renewals or service fees. For example, a Prudential policy that he projected I would get, I think, about $100 a month renewals, lapses this year; that means I won't get anything on it. Additionally, my business is universal life policies in which you reach a point in paying premiums where you pay them out to keep the policy in force for as long as you want; and at that point you quit paying premiums. That means I don't get any more commissions. That's generally the 12 to 15 year area. I guess the guiding light on that is if there are no premiums paid on disability, term insurance, universal life or group insurance, I don't get any renewals. I remember a few years ago, some farmers in south Arkansas were having a difficult time, and they had enough cash in their policies to pay their premiums; so they skipped two or three years. If they didn't pay a premium, I didn't get a renewal commission. I have people do that every year.

The record does not support the chancellor's ruling nor this court's holdings that the commissions and fees from the sale of the insurance policies are the property of the corporation. However, the majority holds that the commissions and residuals are corporate assets and are thus unavailable for distribution without the necessity of piercing the corporate veil. This holding allows the court to ignore the supreme court's decision announced in *McDermott v. McDermott*, 336 Ark. 557, 986 S.W.2d 843 (1999). In *McDermott*, it was determined that attorney's fees earned pursuant to a contingency fee contract made during the marriage is marital property even though the fee is not collected until some time in the future. In my opinion, renewal fees from insurance policies sold during the marriage are similar to an attorney's contingency fee contract

entered into during marriage and is thus a marital asset subject to division.

Accordingly, as in *Layman* and *McDermott,* I would remand with instructions to determine the current fair-market value of the renewal fees, commissions and residuals from the sale of insurance policies and direct that an equal division of that value be made. Also, I would remand with instructions to determine the current fair-market value of the business reduced by the fair-market value of the business at the time of the marriage. The difference would be marital property, which would also be subject to equal division commensurate with Ark. Code Ann. § 9-12-315(a)(1)(A)(Repl. 1998). I agree with the majority in reversing the chancellor's allocation of debts.

GRIFFEN, J., joins.