SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-743

| | | |
|---|---|---|
| SANDRA JEAN FRY | | **Opinion Delivered:** May 20, 2015 |
| | APPELLANT | APPEAL FROM THE HEMPSTEAD COUNTY CIRCUIT COURT |
| V. | | [NO. 29DR13-221-1] |
| JIMMY WAYNE FRY | | HONORABLE RANDY WRIGHT, |
| | APPELLEE | JUDGE |
| | | AFFIRMED |

## WAYMOND M. BROWN, Judge

This appeal involves the division of marital property following the parties' 2014 divorce. Sandra Jean (Flowers) Fry brings this appeal from the Hempstead County Circuit Court's decree ending her marriage to Jimmy Wayne Fry. For reversal, Sandra Fry argues that the circuit court erred by (1) disregarding the parties' prenuptial agreement when it considered her pre-marital inheritance in diminishing her marital property rights; (2) making an unequal division of property on the basis of inheritance property; and (3) misapplying the relevant factors for division of marital property pursuant to Arkansas Code Annotated § 9-12-315(a)(1)(A)(i)–(ix). Because we find no error in the circuit court's decision, we affirm.

The parties separated in August 2013 after twenty-two years of marriage, and Sandra Fry filed her petition for divorce on September 11, 2013. Previously the parties had married in 1981 and divorced in 1983. Prior to their second marriage, the parties

SLIP OPINION

executed a "Mutual Disclaimer of Interest," agreeing that any inheritance received from the parties' parents would remain separate property. Below is the portion of the agreement at issue in this appeal.

> Husband waives, releases, foregoes, and disclaims all of his rights in any and all property, real, personal, or mixed, wheresoever situated, which Wife is or may become seized or possessed, either by gift or inheritance from W.D. Flowers, Jr. or Daris Jean Flowers and expressly waives all right to inherit from Wife any of such property under the laws of any and all States of the United States, and agrees that Wife shall have the right to dispose of all of said property by Will.

In 2012, W.D. Flowers died leaving his daughter, Sandra Fry, as the sole beneficiary of his approximately $600,000 estate. At a bench trial on May 12, 2014, she testified that she was seeking an equal division of marital property and introduced the premarital contract without objection. Conversely, appellee introduced evidence of account values and certain appraised portions of real estate owned by appellant, over her objection, as well as her inheritance from her father, requesting the circuit court make an unequal property division. The court granted appellant's petition for divorce on the basis of general indignities, and in an order dated May 15, 2014, divided the property as follows:

> In consideration of all the evidence presented, and for the reasons stated above, the Court awards Sandra Fry her Roth IRA, her IRA, the Arkansas Diamond account, the Ameriprise account, her APERS retirement, any interest she may have in a personal service corporation of which evidence was presented showing she earned approximately $6,000 per year, subject to the provisions set out below.
> The Court awards Jimmy Fry his investment accounts, including the Allstate account, the Allstate IRA, Prudential IRA and the Lincoln account. The Court further awards the home at 1510 Fairway Dr., Hope, Arkansas to Jimmy Fry and he is to assume the mortgage on the home and hold Sandra Fry harmless from any liability on the home. . . . The Court further finds

that Sandra Fry shall reimburse Jimmy Fry $5,493.15 as expenses incurred in upkeep on the house. Additionally, Sandra Fry shall pay Jimmy Fry $6,500 representing one-half the difference in contributions made toward purchases of real estate by the parties during their marriage. Sandra Fry is further ordered to reimburse Jimmy Fry $20,000 which represents one-half the amount Sandra Fry withdrew from the deferred retirement account at the time the parties separated. . .

The Court further finds by granting Sandra Fry her APERS account and by granting Jimmy Fry his retirement and investment and the marital home with equity of $30,000, it is equitable further that Sandra Fry pay to Jimmy Fry the amount of $21,500, which represents one-half of the value of her Roth IRA, IRA, Arkansas Diamond account and Ameriprise account.

Sandra Fry appealed.

We review cases dividing marital property de novo.[1] However, we will not reverse a finding of fact by the circuit judge, including whether certain property is marital property, unless it is clearly erroneous.[2] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.[3]

Sandra Fry advances three basic and interrelated arguments for reversal: (1) that the circuit court disregarded the premarital contract when it divided the parties' property; (2) that it also erred in making an unequal property division; and (3) that the statutory factors did not support an unequal division. Conversely, appellee responds that the circuit court,

---

[1] *Horton v. Horton*, 2011 Ark. App. 361, 384 S.W.3d 61 (citing *Gillam v. Gillam*, 2010 Ark. App. 137, 374 S.W.3d 108).

[2] *Hargrove v. Hargrove*, 2015 Ark. App. 45, 453 S.W.3d 683 (citing *Scott v. Scott*, 86 Ark. App. 120, 161 S.W.3d 307 (2004)).

[3] *Atkinson v. Atkinson*, 72 Ark. App. 15, 32 S.W.3d 41 (2000) (quoting *Smith v. Parker*, 67 Ark. App. 221, 998 S.W.2d 1 (1999)).

in fact, acknowledged and upheld the contract, that the property division was equal, and that even if it had been unequal, the division was supported by relevant statutory factors.

Appellant's first argument is somewhat perplexing. At points throughout her brief she argues that the circuit court disregarded the premarital contract, directly violated the terms of the contract, or maybe infringed on the intent of the contract. Perhaps the easiest argument to discern is shown when she states that the "heart of this appeal is that the trial court erred in disregarding that agreement, by only acknowledging its existence yet deviating from its core." We find no error.

The main problem with appellant's argument is that it rests on the assumption that the circuit court unequally divided the property, which is an inaccurate statement that we will address below. While we agree that the circuit court did little beyond acknowledging the existence of the contract, we cannot say that it deviated from the core of that contract for the simple reasons that the court did specifically note the existence of the contract in its order and, more importantly, it did not divide any of Sandra Fry's inheritance. In the instant case, appellee waived his right to receive any inheritance from his former wife's father. "Waiver" is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits, and it may occur when one, with full knowledge of the material facts, does something that is inconsistent with the right or his intention to rely upon it.[4] Furthermore, it is our duty

---

[4] *Taylor v. Hamilton*, 90 Ark. App. 235, 205 S.W.3d 149 (2005).

to enforce contracts as they are written and in accordance with the ordinary meaning of the language used and the overall intent and purpose of the parties.[5]

The plain language of the parties' "Mutual Disclaimer of Interests" states that appellee waives all interest in any property that appellant would have received from her father. Therefore, he voluntarily abandoned any claim he would otherwise have had to W.D. Flowers's $600,000 estate. At the point that the circuit court awarded zero dollars from that inheritance to appellee, it not only acknowledged the existence of the contract, but actually enforced its validity. There is no error.

Further weakening the "heart" of Sandra Fry's appeal, and in contravention of her second argument, is the fact that the circuit court made an equitable division of property. First, the language of the circuit court order demonstrates that the judge was intending to make an equal distribution when he stated "it is equitable further that Sandra Fry pay to Jimmy Fry the amount of $21,500." A circuit court has broad powers to distribute property in order to achieve an equitable distribution.[6] We also note that our property division statute, Arkansas Code Annotated § 9-12-315, does not compel mathematical precision in the distribution of property; its overriding purpose is to enable the court to make a division that is fair and equitable under the circumstances.[7] Nevertheless, a study of the property values distributed in the instant case, which we must accept as correct, shows near mathematical precision. Subsequent to the divorce, appellant received the following:

---

[5] *Hancock v. Tri-State Ins. Co.*, 43 Ark. App. 47, 858 S.W.2d 152 (1993).

[6] *See Hodges v. Hodges*, 27 Ark. App. 250, 770 S.W.2d 164 (1989).

[7] *Jones v. Jones*, 2014 Ark. 96, 432 S.W.3d 36.

| Roth IRA | $ | 7,412.39 |
|---|---|---|
| IRA | | 9,729.03 |
| Ark. Diamond | | 30,000.00 |
| Ameriprise | | 5,534.84 |
| APERS Account | | 403,663.00 |

Thus, the total amount of assets distributed to Sandra Fry was $456,339.26. Appellee received the following:

| Allstate | 40,770.05 |
|---|---|
| Allstate (2) | 58,079.84 |
| Lincoln | 60,513.46 |
| Prudential | 225,449.46 |
| Marital Home | 160,000.00 |

Although appellee's total assets amount to $545,812.73, our analysis is not finished. As part of the distribution, appellee has also been left the responsibility of paying for the couple's first mortgage, totaling $131,000, thus reducing his share of assets to $414,812.73. The circuit court then adjusted certain aspects of the division to effectively equalize the amount distributed to both parties.[8] Appellee was awarded an additional $21,500 after the court granted appellant her APERS retirement account, worth $403,663, and appellee the $30,000 equity in the marital home. If we accept these figures as true, and we must

---

[8] It further required appellant to reimburse appellee $6,500 as the difference between what the two collectively contributed to marital home purchases, as well as an additional $20,000 representing one-half of the amount that appellant withdrew from a deferred retirement account when the parties separated. These awards balanced out assets that were no longer in existence, and therefore, were not marital property for purposes of division.

considering our standard of review, the net value received by appellant was $434,839.26, and by appellee, $436,312.73. The difference in awards is almost nominal. Thus, there was an equal distribution of the parties' property.

Finally, even if our court were to find that there was an unequal distribution, we would still affirm. A court's unequal division of marital property will not be reversed unless found to be clearly erroneous.[9] The circuit court order meets the mandates prescribed by Ark. Code Ann. § 9-12-315. The statutory factors our courts take into consideration for distribution of marital property include: (i) length of the marriage; (ii) age, health, and station in life of the parties; (iii) occupation of the parties; (iv) amount and sources of income; (v) vocational skills; (vi) employability; (vii) estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; (viii) contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker, and; (ix) the federal income tax consequences of the court's division of property.[10] The trial court must consider these factors and state its reasons for dividing property unequally, but it is not required to list each factor in its order nor to weigh all the factors equally.[11]

The circuit court discussed several of these factors in its order.

In considering the evidence presented, the parties have been married for 23 years as of the date of divorce and were previously married for 2 years when they divorced in 1983. As it was stated by Sandra Fry they operated their marriage as a team, even though each kept their earnings and savings

[9] *Keathley v. Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001).

[10] Ark. Code Ann. § 9-12-315(a)(1)(A).

[11] *Keathley, supra.*

separately. They divided the expenses equally and were successful in their marriage for a long time, and they accumulated some wealth during this time. The Court notes that there was a Mutual Disclaimer of Interest entered into by the parties prior to their second marriage. The Court finds the length of time of the marriage and the timing of the divorce at this time in the couple's life as significant. The parties have both worked to accumulate as a couple a nest egg that if taken together would enable them to enjoy their retirements together. However, with the granting of the divorce the wealth must be separated. The Court finds that it is apparent Sandra Fry will continue to earn income from some work and that Jimmy will not.

Hence, in reaching its decision, it is clear that the circuit court at least considered the relevant statutory factors for distribution of marital property, specifically discussing factors such as the length of the marriage, sources of income, contribution to the marriage, etc. Again, we cannot say that the circuit judge clearly erred.

In summation, appellant Sandra Fry would like for us to believe that it is error for the circuit court to note her inheritance in its order dividing property because of the existence of the premarital contract. She is incorrect. The premarital contract required that Jimmy Fry would not receive any of his wife's inheritance from her father. He did not. Thus, the contract was upheld, and the circuit court made an equal division of marital property.

Affirmed.

ABRAMSON and GLOVER, JJ., agree.

*Robert S. Tschiemer*, for appellant.

*Wilson, Walker & Short*, by:  *Charles M. Walker*, for appellee.