

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-12-974

| | | |
|---|---|---|
| WILLIAM DAVID BRICE | APPELLANT | Opinion Delivered OCTOBER 30, 2013 |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION [NO. DR-11-2102] |
| TATYANA A. BRICE | APPELLEE | HONORABLE VANN SMITH, JUDGE |
| | | AFFIRMED |

## DAVID M. GLOVER, Judge

Appellant, William Brice, and appellee, Tatyana Brice, were divorced by decree entered on July 20, 2012. The trial court awarded custody of the couple's three children to Tatyana and ordered William to pay child support and alimony. At the time the decree was entered, AnB was age fourteen, NB was age eight, and AmB was age six. AnB is not William's biological child, but he adopted her during the marriage. William appeals, contending that the trial court erred in failing to grant him custody of the children. We affirm.

Child-custody cases are reviewed de novo, but we will not reverse a trial court's findings of fact unless they are clearly erroneous. *Dodd v. Gore*, 2013 Ark. App. 547. A finding of fact is clearly erroneous if, after reviewing all of the evidence, the appellate court is left with a definite and firm conviction that a mistake has been made. The question of



whether a trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, and therefore, we give special deference to the trial court's superior position to evaluate the witnesses, their testimony, and the child's best interest. *Id.* There are no cases in which the trial court's superior position, ability, and opportunity to observe the parties carry as great a weight as those involving minor children. *Id.*

*Discussion*

As his sole point of appeal, William contends that the trial court erred in failing to grant custody of the three children to him, asserting several errors concerning the trial court's factual findings. We disagree.

The trial court made numerous findings regarding custody of the children, which provide a good background for the issue raised in this appeal:

24. For the reasons stated below, the Court finds that it is in the children's best interest that custody remain with [Tatyana], subject to the liberal visitation rights of [William].

25. The court first acknowledges that [William] is suitable to have the care and custody of the minor children. [William] is a professor at Menlo College [located in California], apparently well respected in his profession even though he was denied tenure at UALR, and capable of making sure that the children's educational needs are well met.

26. The parties met in Hawaii. [Tatyana] had come to Hawaii from the Ukraine where she had been married and divorced. The oldest child, AnB, was born to a previous marriage but after [William] and [Tatyana] married, [William] adopted AnB. Both AnB and [Tatyana] are U.S. citizens.

27. After the parties married, they had two children, for a total of three children whose ages now range from 6 years old to 14 years old.

28. Both parties attempted to paint the other party as inadequate in their parenting skills.

29.     [William] stated that [Tatyana] was not attentive to their children, allowed AnB to miss school and make poor grades at Little Rock Central, and that she was negligent in failing to make sure AnB turned in homework. [William] also said [Tatyana] was associating with several men in the presence of the children.

30.     [William] further attempted to show that [Tatyana] was involved in witchcraft and other bizarre behavior.

31.     [Tatyana], on the other hand, stated that she was a member of the Greek Orthodox Church and participated in services regularly at that church. She further stated that she was not involved in witchcraft.

32.     [Tatyana] testified that all three children are doing fine even though AnB was having a difficult time during the 2011–2012 school year. [Tatyana] stated that she has met with school teachers and counselors and the turmoil in the parties' lives had a negative impact on AnB's school work.

33.     AnB stated that she would like to live with her mother as well as her two younger sisters.

34.     The evidence reflects that [William] has no family support in California and [the children] would have no support system while living with the father. On the other hand, [Tatyana] testified that there is a church family and also friends in Little Rock with which they associate.

35.     Dr. Paul Deyoub testified that it was his opinion that the children should remain with the mother. His report and testimony detailed the positives and negatives of both [William] and [Tatyana]. Most of the testimony concerned AnB. Little testimony was presented regarding the two younger children, but the Court was impressed by the testimony of Sarah Beth Spradley and Marianda Page Shyrock who both work at Chenal Valley Montessori School, where AmB has attended for the last two to three years and where [Tatyana] now works. Both teachers stated that [Tatyana] was a devoted parent to her children and was an active participant at school. They stated that [Tatyana] was totally appropriate at school and that children attending Montessori School loved [Tatyana] as a part-time teacher.

36.     Much has been made of AnB, but it is important to note that the younger children are doing very well and are well adjusted. Neither party wants to split the children up. It appears that AnB and the two younger children have a good relationship and should remain together.

37. The Court finds that it is in the children's best interest that they all remain together and that they stay with their mother in Little Rock.

William first argues that even though AnB expressed her preference to stay with Tatyana at the final hearing, she had expressed an earlier preference to be with him. He urges the notion that AnB only changed her preference because she was afraid Tatyana would commit suicide if AnB left. After reviewing the evidence, we do not find his argument persuasive. At the June 25, 2012 hearing, AnB acknowledged that in earlier testimony she had stated that although she loved both of her parents, she had expressed a preference for living with her dad. However, she explained at the June 25 hearing that she currently preferred to live with her mother. She also acknowledged that she had stated in her earlier testimony that she was afraid her mother might hurt herself if she did not have the kids with her; that her mother was sometimes hysterical when her mother talked about keeping the kids with her; and that her mother had said at the beginning of the divorce that she would commit suicide if William would not let her stay with the kids. AnB explained to the trial court, however, that while those statements were true when she said them that they were no longer true; that her mother had calmed down and did not get hysterical any more; and that she no longer had concerns about her mother committing suicide.

William further contends that Tatyana inflicted verbal and emotional abuse on the children, even calling AnB names, and that verbal abuse was a gateway to physical abuse. AnB testified that her mother "still kind of screams at me for some things I do, but not that often any more and she's just been calmer since my dad has been away." AnB stated that she did not really know how to explain it but that when her mother screamed at her, she would

SLIP OPINION


scream back and that "[i]t turns into like a screaming fit between both of us." AnB further testified, however, that her mother no longer blamed her for the divorce, that she preferred to live with her mother, that she needed her mom right now because of the changes going on in her life as a teenager, and that her mom could explain things and handle AnB's mood swings better than her father. The trial court was present to hear AnB's testimony, assess her credibility, and evaluate the children's best interest. Our review of the evidence does not leave us with a firm conviction that the trial court made a mistake.

William further argues that Tatyana's moral character should have been addressed by the trial court because she had a tendency to lie, she was involved in witchcraft, and she had numerous relationships with various men. The trial court clearly heard William's allegations, along with Tatyana's counters to the allegations, and still determined that it was in the children's best interest for Tatyana to have custody. The trial court was in the best position to make that determination.

Next, William contends that he was the primary caregiver for the children and the one who provided structure for the household; that without him, the house was in terrible condition; AnB was not doing well in school; and that the children were left alone at night. Again, the trial court acknowledged that both parties "attempted to paint the other party as inadequate in their parenting skills," and then noted the allegations each had made against the other. Despite each parent's effort to degrade the other, the trial court found them both to be suitable to have the care and custody of the children. We find no clear error in that finding.

SLIP OPINION

Finally, William relies upon the fact that the attorney ad litem recommended that he be awarded custody and argues that the trial court should have followed the ad litem's recommendation. We dispose of this contention by merely noting that the trial court is in no way bound to follow an ad litem's recommendation.

In short, the court found both parents were suitable to care for the children, but concluded that it was in the children's best interest to award custody to Tatyana. The trial court adequately supported that conclusion with findings of fact based on the evidence before it, and we are not left with a definite and firm conviction that any of the trial court's findings of fact were a mistake.

*Motion to Strike or to Require Amendment of William's Brief*

During the appellate briefing of this case, Tatyana filed a motion to strike or to require amendment of William's brief because it contained information that was not part of the record before us. We declined to consider the motion until submission of this case. The portion of William's brief being challenged is a footnote that conveyed information not in the record that purportedly happened after entry of the decree. Our court will not consider information that is not part of the record before us on appeal. *Union Pac. R.R. Co. v. Barber*, 356 Ark. 268, 149 S.W.3d 325 (2004). Accordingly, we strike footnote one on page three of William's brief, and we note that the information was not considered by this court in making its decision in this appeal.

Affirmed.

WYNNE and VAUGHT, JJ., agree.

*Worsham Law Firm, P.A.*, by: *Richard E. Worsham*, for appellant.

*Mylissia M. Blankenship*, for appellee.