

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-13-352

| | |
|---|---|
| GARY K. OVERSTREET<br>APPELLANT | Opinion Delivered December 4, 2013 |
| V. | APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. DR–2011-0155-6] |
| CRYSTAL C. OVERSTREET<br>APPELLEE | HONORABLE DAVID F. GUTHRIE, JUDGE |
| | AFFIRMED IN PART; AFFIRMED IN PART, WITH INSTRUCTIONS; REVERSED AND REMANDED IN PART |

**DAVID M. GLOVER, Judge**

Gary and Crystal Overstreet married in 1996 and divorced in 2012. One child, Amelia, was born of this marriage (D.O.B. 2/28/2004). It was not an amicable divorce, with several motions filed during its pendency, including some for contempt and for change of temporary custody (which had been granted to Crystal). The divorce hearing was first held on January 18, 2012, and at the close of that hearing, the record was left open for certain designated matters to be resolved. On October 3, 2012, another hearing was held, which focused on custody and contempt issues. The divorce decree was entered on December 28, 2012. It granted custody of Amelia to Crystal, with standard visitation for Gary; set child support at $287 every two weeks; awarded Crystal $1,722 for child-support arrearages; gave possession of the marital home to Crystal, until the later of Amelia turning 18 or graduating



from high school; ordered Crystal and Gary to share equally the mortgage payment on the marital home; apportioned some of the personal property and marital debt; and provided loosely for an award of attorney's fees to Crystal.

Gary Overstreet raises five points of appeal: 1) it was error to award custody of the minor child to Crystal; 2) the amount of child support awarded should be reduced; 3) the circuit court's award of possession of the marital home to Crystal and requiring Gary to bear the burden of half the mortgage payment until the child reaches the age of majority was error; 4) the circuit court clearly erred, as a matter of law, when it determined that a third party, not involved in this action, was the owner of an item of marital property; 5) the circuit court's allocation of the parties' debt was grossly inequitable. We affirm the award of Amelia's custody to Crystal; we affirm the award of child support, but with instructions to modify the amount to accurately reflect the amount set by the child-support chart; we reverse and remand for the trial court to reconsider the allocation of debt to take into account debt that was omitted from the original decree, and in so doing to feel free to reconsider the overall allocation of debt that might thereby be affected, including the mortgage on the marital home; and we reverse and remand the findings regarding ownership of the boat and trailer.

*Discussion*

For his first point of appeal, Gary contends that the trial court erred in awarding custody of Amelia to Crystal. We disagree.

Child-custody cases are reviewed de novo, but we will not reverse a trial court's


findings of fact unless they are clearly erroneous. *Brice v. Brice*, 2013 Ark. App. 620. A finding of fact is clearly erroneous if, after reviewing all of the evidence, the appellate court is left with a definite and firm conviction that a mistake has been made. *Id.* The question of whether a trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, and therefore, we give special deference to the trial court's superior position to evaluate the witnesses, their testimony, and the child's best interest. *Id.* There are no cases in which the trial court's superior position, ability, and opportunity to observe the parties carry as great a weight as those involving minor children. *Id.*

The trial court's award of custody is contained in paragraph two of the decree and provides:

> 2. Custody: These parties had one minor child born of their marriage, Amelia Overstreet, date of birth February 28, 2004. The temporary order entered May 19, 2011, placed custody with Crystal. Both parties have demonstrated that they are capable of caring for the child and both have a support structure of family and friends to assist them. *Crystal has been the primary caregiver during the course of the marriage and has managed the custody properly under the temporary order.* Although both parties have had personal challenges during the marriage, both have overcome those challenges in a manner that does not adversely affect custody or visitation. *Accordingly, it is in the best interests of the child that custody is awarded to Crystal Overstreet.*

(Emphasis added.)

The gist of Gary's argument concerning the award of custody to Crystal is that the trial court "singled out one factor without giving appropriate attention to the overall best interests of the child." That factor was that Crystal had been Amelia's primary caretaker. Gary argues that he deserved a more detailed analysis of the best interests of his daughter "and had such analysis been conducted it would have clearly demonstrated the child would be better off in



his custody, not Mrs. Overstreet's." He then lists several factors that can be considered by a trial court, but that he contends were not specifically considered by the trial court in this case. He also contends that he has had a more stable employment history; that Crystal has not fostered communication and visitation; that Crystal has a history of using prescription and non-prescription drugs; that she had extramarital affairs; that she sprayed Amelia's eyes with perfume as punishment; that she did not regularly take the child to the doctor or dentist; that she had refused to work to help with family expenses and had wiped out the family's savings; that he had family who could help get Amelia to and from school, while Crystal was taking her to work at 6 a.m.; that Crystal had engaged in extramarital cohabitation; and that Gary was better prepared financially to care for Amelia. He concludes that our court should be left with a definite and firm belief that the trial court was mistaken in awarding custody to Crystal.

We have reviewed all of the evidence in this case, and we are not left with a definite and firm conviction that the trial court made a mistake in awarding custody to Crystal. Gary's contentions about facts that should have been considered by the trial court and that, he says, weigh in his favor have been highlighted above. However, Crystal testified that Gary had a history of anger issues; that he had a history of gambling-debt problems; that he had made exchanges difficult by involving the El Dorado Police Department; that Amelia was doing very well; that Amelia made straight A's in school; that Gary is a truck driver and she did not know how he would handle custody being on the road so much; that she did not like for Amelia to ride with him in the 18-wheeler and had therefore refused to sign any hold-harmless agreements that would have allowed Amelia to do so; that both she and Gary had



used illegal drugs in the past; that in 1999, Gary had tried to commit suicide; and that she does not think Amelia bathes when she is visiting with her father. Perhaps most importantly, Gary's stepmother, Judy Fussell, testified at the October 2012 hearing that she was not on anyone's "side" but Amelia's; that Gary had very serious anger issues, for example, threats of physical harm to Crystal, including threats to use a gun to kill her; that she hoped the threats were not real; and that she believed he would never hurt Amelia.

Giving special deference to the trial court's superior position to evaluate witnesses, testimony, and the child's best interests, *Brice, supra*, we find no clear error in the trial court's decision. We, therefore, affirm the award of Amelia's custody to Crystal.

Gary next contends that the trial court erred in setting the amounts of child support and arrearage. We affirm the award of child support and arrearage, but with instructions to modify the child-support amount as discussed *infra*.

We review child-support cases de novo on the record, but we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Bass v. Bass*, 2011 Ark. App. 753, 387 S.W.3d 218. Administrative Order Number 10 includes a family support chart that indicates the amount of support due, depending upon the payor's income. *Id.* A trial court's order awarding child support must recite the amount of support required by the chart and recite whether the court deviated from that amount. *Id.* It is a rebuttable presumption that the amount of child support calculated pursuant to the chart is the appropriate amount. *Id.* If the court deviates from the chart amount, it must include specific written findings stating why, after consideration of all relevant factors including the best interest of the child, the chart

5

amount is unjust or inappropriate. *Id*.

Paragraph four of the divorce decree sets out the child-support award, providing:

> 4. **Child Support:** Gary Overstreet shall pay child support in the sum of $287 every two weeks pursuant to the chart based on an income of $1,750 every two weeks. Payment shall be made through the circuit clerk's office or other third party system to insure accurate payment records. Crystal Overstreet is awarded judgment against Gary Overstreet for the sum of $1,722 for arrearage to the hearing date of January 18, 2012. Any arrearage issue arising since that date is reserved for further proceedings.

Gary contends that "there are several errors in the Circuit Court's calculation of child support and its award of a judgment for an arrearage." He summarizes those errors as: 1) the trial court miscalculated his bi-weekly take-home income, 2) it failed to take into consideration a decrease in his income in recent months because of economic factors beyond his control, and 3) the arrearage amount should have been no more than $861, not the $1722 awarded. In addition, he argues that the amount of child support awarded by the trial court imposes an impossible financial burden on him in light of his other debts.

After reviewing the evidence, we are not left with a definite and firm conviction that a mistake was made regarding any of the items argued by Gary. For example, in his affidavit of financial means, Gary represented his range of bi-weekly net income as between $1500 to $2000. During cross-examination, he acknowledged that taking the two years for which income tax returns were available, 2008 and 2009, (he claimed he did not file for 2010 and 2011 because Crystal had the necessary receipts), he averaged about $59,000; that dividing $59,025 by 52 weeks amounted to $1,135.10; and that amounted to $2,270.19 when multiplied by 2. He also acknowledged that the only proof he brought was a "short paycheck," and that it was therefore necessary to rely on his 2008 and 2009 tax returns



because he did not bring a full paycheck or other proof of his current income. Moreover, in making his argument to our court that he should have been awarded custody, Gary's brief explains, "Mr. Overstreet earns somewhere between $1100 every two weeks to $1750 every two weeks." $1750 is the figure the trial court relied on in referring to the child-support chart. Our review of the evidence presented does not convince us that the trial court clearly erred in determining Gary's income or in its rejection of Gary's position that his income had significantly decreased. Similarly, with respect to the award of arrearage and the rejection of Gary's argument that an impossible financial burden had been placed upon him, we also find no clear error.

We do, however, find a mistake in the actual chart amount awarded. Based on the trial court's finding that Gary's income was $1750 every two weeks, and about which we have found no clear error, the child-support chart shows the appropriate amount as $277 every two weeks, not the $287 every two weeks that was set forth in the decree. Therefore, we affirm the award of child support based on an income level of $1750 every two weeks, with instructions to correct the amount of child support to $277 every two weeks, in accordance with the child-support chart.

We next address Gary's third and fifth points of appeal together because they both deal with the division of marital debt. Specifically, as his third point of appeal, Gary contends that the circuit court erred in awarding possession of the marital home to Crystal and requiring him to bear the burden of half the mortgage payment during Amelia's minority; and for his fifth point of appeal, he contends that the trial court's allocation of the parties' debt was

SLIP OPINION

grossly inequitable and that several items of debt were not addressed nor allocated by the trial court in the decree. We reverse and remand for the trial court to address the allocation of debt that was omitted from the decree, and which might thereby necessitate a reconsideration of the overall allocation of debt, including payment of the home mortgage.

The division of marital debt is not addressed in Arkansas Code Annotated section 9-12-315 (Repl. 2009) (division of property). However, the trial court has the authority to consider the allocation of debt in a divorce case. *Baker v. Baker*, 2013 Ark. App. 543, ___ S.W.3d ___. The allocation of debt is an essential item to be resolved in a divorce dispute. *Id.* A trial court's decision to allocate debt to a particular party or in a particular manner is a question of fact and will not be reversed on appeal unless clearly erroneous. *Id.* Allocation of marital debt must be considered in the context of the distribution of all the parties' property. *Bellamy v. Bellamy*, 2011 Ark. App. 433. There is no presumption that an equal division of debts must occur. *Spears v. Spears*, 2013 Ark. App. 535. Therefore, it is not error to determine that debts should be allocated to the parties based on their relative abilities to pay. *Id.* The key is that the division of debt must be equitable. *Id.*

Here, Gary lists several debts that were presented to the trial court in the affidavits of financial means but omitted by the trial court in the decree. The divorce decree provides:

> 9. **Debt:** The parties shall share equally the debt to the Internal Revenue Service and the Ford Motor Credit Company. Gary Overstreet shall be responsible for the debts to Capital One, Credit One, the embryo storage company and Dish.

Additionally, in paragraph six of the decree, the trial court gave Gary possession and title to the 2009 truck and the 18-wheeler, providing that Gary was to be solely responsible for the

SLIP OPINION

debt on said vehicles. Under paragraph five of the decree, the trial court divided equally between Gary and Crystal responsibility for payment of the mortgage on the marital home, i.e., one-half each, with possession of the house going to Crystal during the period of Amelia's minority.

Gary acknowledges that he and Crystal have no real assets; that the court was dealing primarily with debts. He contends, however, that the trial court's division of debt was not equitable, and that the trial court omitted entirely the allocation of the following debts: tax attorney ($325), John Deere ($5,863.55), hospital ($27,000), doctors ($180), Hughes Net ($483.11), and Iberia Bank ($17,882.52), totaling approximately $50,000.

Our review of the record reveals that the $17,882.52 debt to Iberia Bank was in fact addressed and allocated by the trial court in the decree because it is the debt associated with Gary's 2009 truck; however, we agree that the trial court did not address the debts to "tax attorney," John Deere, hospital, doctors, and Hughes Net, totaling over $34,000. Because we regard this as a significant amount of unallocated debt, we remand to the trial court for it to address these unallocated debts, to do so in the context of the overall division of debt, and to reconsider any prior division of debt if necessary in order for the overall division of debt to be equitable.

Finally, we address Gary's remaining point of appeal in which he contends that the trial court "clearly erred, as a matter of law, when [it] determined that a third party, not involved in this action, was the owner of an item of marital property." We agree.

The item of property involved in this point of appeal is a boat and trailer. The divorce

decree provides:

> 8. **The boat:** The john boat was informally mortgaged to James Manning [Crystal's father] for debt and forfeited for nonpayment. The boat and its trailer shall therefore belong to James Manning.

Gary argues that the trial court exceeded its authority in awarding the boat/trailer to James Manning because Manning was not a party to this action. Crystal made no claim to the boat and trailer. Under the circumstances of this case, if the trial court had limited its ruling to a mere determination that the boat and trailer were not marital property, and therefore not subject to division between Crystal and Gary, we would not have found clear error. However, the trial court went beyond that finding and determined that ownership of the boat lay with James Manning, who was not a party to this action. *See Grace v. Grace*, 326 Ark. 312, 930 S.W.2d 362 (1996). We, therefore, reverse and remand this ownership issue, leaving it to Gary and James Manning to pursue any action between themselves to determine ownership of the boat and trailer.

Affirmed in part; affirmed in part, with instructions; reversed and remanded in part.

HIXSON and WOOD, JJ., agree.

*Robert L. Depper, Jr.*, for appellant.

*F. Mattison Thomas, III*, for appellee.